(102 So. 705)

**MALONE et al. v. DILLARD.** (6 Div. 173.)

(Supreme Court of Alabama. Jan. 15, 1925.)

**1. Brokers ☞61(1)—Commission not payable for production of purchaser, where contingent on consummation of sale.**

Where broker's contract of employment provides either expressly or by necessary implication that commission shall be contingent on consummation of sale; production of purchaser does not entitle broker to compensation where sale fails because of defect in principal's title.

**2. Brokers ☞61(1) — Commissions held contingent on consummation of sale in view of interpretation of brokers' contract and contract of sale.**

Where sale was not consummated because of defective title, brokers *held* not entitled to commissions, where contract of sale was expressly contingent on good title, where both contract of sale and brokers' contract stipulated for return of earnest money if title proved defective, and where latter contract provided for payment to brokers of one-fourth of purchase money.

**3. Brokers ☞61(1)—Stipulations in contract of sale and in brokers' contract considered as bearing on whether commission was contingent on consummation of sale.**

Stipulation in brokers' contract of employment, and in contract of purchase and sale of property, that vendor was to return earnest money if title proved defective, and additional stipulation in latter contract that sale was conditioned on good and merchantable title, can be considered in determining whether commission was intended to be contingent on consummation of sale, as against objection that they were surplusage, since they added nothing to what law already would demand.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by W. N. Malone and G. E. Harrison against J. W. Dillard, to recover real estate broker's commissions. Judgment for defendant, and plaintiffs appeal. Affirmed.

The contract exhibited (B) with counts 14 and 15 is as follows:

"Dec. 24, 1920.

"J. W. Dillard of Autauga county, Alabama, agrees to deliver by good and merchantable title 32,000 acres of land conveying mineral rights and privileges by warranteed deed and title proved by abstract, and agrees to convey this property to Dr. A. B. Gresham, of South Carolina, at a price of $32,000. This price being $1 per acre for land conveyed.

"J. W. Dillard through his agents, W. N. Malone and G. E. Harrison, of Jefferson county, Alabama, have attached hereto a typewritten description of his property in full, and showing the different sections, townships, and ranges.

"Dr. A. B. Gresham, of South Carolina, agrees to purchase said property if said property can be delivered by good and merchantable title, provided that the said J. W. Dillard shall deliver an abstract of title to date, and that the said title shall be acceptable to Dr. A. B. Gresham through his attorneys.

"Dr. A. B. Gresham has paid to J. W. Dillard $100 in cash of earnest money through W. N. Malone, agent of J. W. Dillard, which 100 dollars is part of the purchase price and acknowledged by J. W. Dillard and attested to by his signature below.

"The condition of the contract of this sale is based upon the good and merchantable title. If the title is a good, merchantable title, and so approved by the attorneys of Dr. A. B. Gresham, then the $100 paid as earnest money becomes a part of the purchase price, and the balance of the money to be paid as follows, $2,500 cash when the title is approved, with four additional payments as follows, $7,350 one year after the approval of title, $7,350 two years after approval of title, $7,350 three years after approval of title, $7,350 four years after

approval of title, and 4 per cent. interest on deferred payments. Deferred payments secured by notes and mortgage on said land.

"J. W. Dillard agrees that if he cannot deliver the attached to described property by good and merchantable title and show same by abstract acceptable to Dr. A. B. Gresham through Dr. A. B. Gresham's attorneys, then the said J. W. Dillard agrees to return through his agent, W. N. Malone, to Dr. A. B. Gresham the $100 cash received this day from his agent, W. N. Malone, which money was received from Dr. A. B. Gresham by W. N. Malone, agent of J. W. Dillard.

"In witness whereof, we have set our hand and seal this the 24th day of December, 1920.

"J. W. Dillard.
"A. B. Gresham, M..D."

The contract set out in plea 2 is as follows:

"This contract made and entered into by and between W. N. Malone and G. E. Harrison of Jefferson county, state of Alabama, parties of the first part, and J. W. Dillard of Prattville, Autauga county, Alabama, party of the second part, witnesseth:

"That the party of the second part owns by warranty deed thirty-two thousand (32,000) acres of mineral rights in Chilton county in state of Alabama. described as follows: * * *

"That the party of the second part has agreed with the party of the first part to sell the above said 32,000 acres, for one dollar ($1.00) per acre, or ($32,000) thirty-two thousand dollars for the thirty-two thousand acres (32,000).

"That the party of the second part agrees to give one-fourth of all moneys received on sale of said properties to parties of first part.

"The parties of first part accepts the contract of party of the second part, and names Dr. A. B. Gresham as purchaser of said tract of mineral rights described hereon.

"The parties of the first part have paid to the party of the second part ($100.00) one hundred dollars of earnest money, which the party of the second part acknowledges by his signature to this document.

"The conditions of sale to Dr. A. B. Gresham to be as follows: One hundred dollars ($100.00) as cash earnest money, and if .title is shown to be a good and merchantable title and shown clear by abstract, the balance of the thirty-two thousand dollars to be paid to J. W. Dillard, through his agent, W. N. Malone and G. E. Harrison as received from Dr. A. B. Gresham as follows: ($2,500.00) twenty-five hundred dollars when title is proven and passed on, and ($7,350.00) seven thousand three hundred and fifty dollars each year with 4 per cent. (4%) interest per annum on deferred payments until the $32,000 has been paid by Dr. A. B. Gresham to J. W. Dillard.

"If the title cannot be made a merchantable title, the $100 of earnest money is to be returned to Dr. A. B. Gresham, and said J. W. Dillard, agreeing in accepting the one hundred dollars ($100.00) earnest money from W. N. Malone that it is to be returned to W. N. Malone for Dr. A. B. Gresham.

"It is further agreed that six hundred fifty dollars ($650.00) to the twenty five hundred dollars ($2,500.00) to be paid by party of the second part to parties of the first part, and that the second note of ($7,350.00) seventy-three hundred fifty dollars is to be transferred to W. N. Malone and G. E. Harrison as soon as sale is consummated or papers signed and delivered.

"Witness our hands and seals this 24th day of December, 1920.    W. N. Malone.
"G. E. Harrison.
"J. W. Dillard."

D. G. Ewing, of Birmingham, for appellants.

A defect in the title by reason of which the sale of the property is not completed does not defeat the right of the broker. who has found a purchaser able to purchase at the stipulated price, and who has been accepted by the owner of the property, to his commission. Birmingham L. & L. Co. v. Thompson, 86 Ala. 146, 5 So. 473; L. & N. v. Shepard, 126 Ala. 416, 28 So. 202; Little v. Fleishman, 35 Utah, 566, 101 P. 984, 24 L. R. A. (N. S.) 1182; 11 Ann. Cas. 788, note; 4 R. C. L. 310; Reasoner v. Yates, 90 Neb. 757, 134 N. W. 651; Empire Sec. Co. v. Webb, 202 Ala. 549, 81 So. 51. The mere fact of the provision for return of the earnest money would not eliminate the obligation of appellee to furnish a good and merchantable title. Hale v. Brown, 211 Ala. 106, 99 So. 645; 4 R. C. L. 333.

Harrison & Judge, of Birmingham, for appellee.

Under the agreement, there was no obligation on the part of appellee to pay commissions, unless the sale was actually consummated or appellee wrongfully refused to consummate it. Ingram Realty Co. v. Brown, 208 Ala. 455, 94 So. 520; Smith v. Sharp R. E. Co., 200 Ala. 666, 77 So. 40; Cremer v. Miller, 56 Minn. 52, 57 N. W. 318; Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724; Norris v. Walsh, 71 Colo. 185, 205 P. 276; Lee v. Greenwood Agency Co., 123 Miss. 823, 86 So. 449; Hartman v. Selling, 97 Or. 368, 189 P. 887, 192 P. 408; Clark v. Hovey, 217 Mass. 485, 105 N. E. 222; Lowenstein v. McPeak, 48 Pa. Super. Ct. 280; Murphy v. W. & W. Live Stock Co., 26 Wyo. 455, 187 P. 187, 189 P. 857; Lindley v. Fay, 119 Cal. 239, 51 P. 333; Hess v. Eggers, 38 Misc. Rep. 726, 78 N. Y. S. 1119; Cremer v. Miller, 56 Minn. 52, 57 N. W. 318; McPhail v. Buell, 87 Cal. 115, 25 P. 266. Where the contract shows the broker is to be paid out of the proceeds of the sale, if there are no proceeds, no commission is due. Roach v. McDonald, 187 Ala. 64, 65 So. 823; Newell v. Port Huron Co., 2 Ala. App. 423, 57 So. 68; Sale v. King Graphite Co., 206 Ala. 573, 91 So. 72; Edwards v. Baker, 39 Cal. App. 755, 180 P. 33.

GARDNER, J. Appellants, real estate brokers, sued appellee for the recovery of their commissions alleged to be due under the contract for the sale of certain real estate situated in Chilton county, Ala. The carse was tried upon an agreed statement of facts,

upon which the court gave the affirmative charge in favor of the defendant. From the judgment following, the plaintiffs have prosecuted this appeal.

While there appears to have been considerable pleading, we are of the opinion that a consideration of the action of the court in giving the affirmative charge will suffice for a disposition of the cause without reference to a detailed consideration of the assignments of error.

The agreed statement of facts discloses that the entire contractual relation between the parties to this cause is to be found in two contracts, one Exhibit B to counts 14 and 15, and the other is set forth in plea 2. The one set out in plea 2 is an agreement between the plaintiffs and the defendant with reference to the sale of this particular property and their compensation therefor. The other, Exhibit B, above noted, is a contract entered into between the defendant and the purchaser, one Dr. Gresham. These two contracts were entered into on the same day, related to one and the same transaction, and it is not questioned that, for a proper interpretation of the intention of the parties and a construction of their agreement these two contracts may be considered together.

Counsel for plaintiffs relies for recovery upon the proposition generally supported by the authorities, and recognized in this state, to the effect that—

"in the absence of a stipulation in the contract between the broker and his principal to the contrary, the former is entitled to his commission, if, acting in good faith, he produces a purchaser willing, able, and ready to take the property upon the terms offered by the principal, although the sale fails because of the defect in the principal's title, of which the broker had no notice." 4 R. C. L. 312; Birmingham, L. & L. Co. v. Thompson, 86 Ala. 146, 5 So. 473; Little v. Fleishman, 35 Utah, 566, 101 P. 984, 24 L. R. A. (N. S.) 1182; Reasoner v. Yates, 90 Neb. 757, 134 N. W. 651; Empire Co. v. Webb, 202 Ala. 549, 81 So. 51.

In the instant case, the agreed statement of facts discloses that the purchaser submitted to the defendant by the plaintiffs was ready, willing, and able to purchase the property on the terms set forth in his agreement of purchase, but he thereafter declined and refused to consummate the same or to make the payment of the first installment therein provided, and to execute the notes therein agreed upon, for the sole reason that the defendant could not deliver a good and merchantable title to said property. It is therefore earnestly insisted by counsel for appellants that the general rule of law above noted is here directly applicable, and that the plaintiffs are not to be deprived of their commissions because of a failure of the consummation of the sale, resulting from an inability on the defendant's part to deliver a good and merchantable title.

The general rule of law thus insisted upon, is not questioned by counsel for appellee, but it is urged that this rule is without application to this particular contract. The contract is in writing, and a decision here must rest upon a proper construction thereof.

"It is, of course, a familiar proposition that a contract must be construed in the light of the facts surrounding the parties when it was made, and that courts will consider the occasion which gave rise to the contract, the relation of the parties, and the objects to be accomplished." Roach v. McDonald, 187 Ala. 64, 65 So. 823.

[1] If the parties to this contract intended that commissions should be paid the broker only in the event of an actual consummation of the sale, then, confessedly, plaintiffs would not be entitled to recover. As was said by the Missouri court in Reiger v. Merrill, 125 Mo. App. 541, 102 S. W. 1072:

"Where a principal, at the time of the employment, is not invested with the full title to the property, and in the contract of employment provides, either in express terms or by necessary implication, against the contingency of not being able to perform, there is no reason in law or morals to justify the recovery by the agent of the agreed commission on the production of a purchaser who is ready, able and willing to buy on the terms proposed. Unquestionably parties to such contracts have the right to agree that the agent shall receive no compensation in the event the principal finds himself unable to perform, and, as long as the latter acts in good faith and honestly endeavors to acquire the title, the agreement of the parties should be enforced."

In the instant case there is no question presented of the bad faith on the part of the defendant or any capricious action on his part, but solely the question of a failure of consummation of the sale on account of defective title.

[2] The contract between these parties discloses an agreement on the part of the defendant to sell the land for a stipulated sum to a purchaser who had evidently been previously procured by the plaintiffs, the purchaser being named in the contract. Referring to the amount of compensation which the plaintiffs would receive, the defendant agreed to give "one-fourth of all moneys received on the sale of said properties to the parties of the first part." There was paid $100 "earnest money." The next clause of the contract discloses the conditions upon which the sale was to be made to Dr. Gresham, the purchaser. It was expressly conditioned upon the title being shown to be good and merchantable, and "clear by abstract"; that the balance of $32,000, over and above the $100 "earnest money," was to be paid to the defendant through the plaintiffs as his agents, as follows: $2,500 when title is

proven and passed on, and $7,350 each year, with 4 per cent. per annum on deferred payments until the $32,000 has been paid. It is next expressly provided that "if the title cannot be made a merchantable title, the $100 of earnest money is to be returned to Dr. A. B. Gresham." The concluding paragraph of the contract shows that the plaintiffs were to receive their entire commissions out of the purchase money when paid; first, they were to be paid $650 out of the $2,500 cash payment to be made by the purchaser, and for the remainder of their compensation the second note of $7,350, to be executed by the purchaser, was to be transferred to them by the defendant. The contract expressly provided that such payment in cash and transfer of said note should be "done as soon as sale is consummated or papers signed and delivered."

: The contract between the proposed purchaser and the defendant, executed on the same day, expressly states that the condition of the contract of this sale is based upon the good and merchantable title. It is further provided in that contract, as in the other, for the return of the "earnest money" in case the defendant is unable to deliver the property by good and merchantable title, and to show the same by abstract acceptable to the purchaser's attorney. The payment of the purchase money and the execution of the note is expressly conditioned upon the approval of the title by the purchaser's attorney. The plaintiffs are expressly referred to in the contract as the agents for the defendant, and as having attached to the contract a full description of the property.

It is thus seen that the parties were very careful to rest this sale and their obligations in reference thereto upon the ability of the defendant to satisfy the proposed purchaser that he had a good and merchantable title to the land, and if such title were not acceptable to the purchaser's attorney, no further obligation rested upon the parties, except the express stipulation that the defendant was to return the "earnest money" which had been paid.

[3] But it is argued by counsel for appellants that, upon the seller's title proving defective, the proposed purchaser had a right to rescind the contract and under the law the right to recover the "earnest money," and therefore the parties in the contract had but stipulated what the law itself would demand. Counsel then reasons that, as a consequence, these provisions may be treated as surplusage. To this we cannot agree. True, the law might give the right of rescission as well as recovery of the "earnest money" in the event of a defective title, but that argues no good reason why the language stated in the contract should be ignored. It is put there for a definite purpose, both in the contract between the purchaser and the defendant, as

well as in the defendant's contract with the plaintiffs. The language expressly guarded the defendant against a defect in his title, guarded him against liability to plaintiffs, except in the event of a consummation of the sale. The contracts expressly show that the parties had in mind the possibility or probability of the title not proving acceptable to the purchaser's attorney; and in construing this contract so as to determine the intent of the parties the language as to these conditions cannot be ignored. The compensation of the plaintiffs was to be "one-fourth of all moneys received on sale of the properties," and was expressly payable out of the purchase money so received. The contract further expressly provided that this compensation should be paid "as soon as the sale was consummated or the papers signed and delivered."

In Cremer v. Miller, 56 Minn. 52, 57 N. W. 318, the Supreme Court of Minnesota, speaking to a somewhat similar situation, said:

"If the contract required the sale to be consummated, and the plaintiff's compensation depended upon the payment of the purchase money, the plaintiff could not recover unless these conditions should exist, or unless the plaintiff was defeated by the fraud, bad faith, or wrongful acts of the defendant. And it is clear that inability to make title within the time specified would not subject the defendant to liability if the contract was not carried out for that cause."

See, also, in this connection, Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724; Norris v. Walsh, 71 Colo. 185, 205 P. 276; Lee v. Greenwood Agency, 123 Miss. 823, 86 So. 449.

In Hale v. Brown, 211 Ala. 106, 99 So. 645, it was held by this court that upon one phase of the evidence the plaintiff was not to be compensated unless the sale was consummated, and the purchase money received, and that, therefore, an instruction that the plaintiff could recover if he produced a purchaser who was ready, willing, and able to buy was erroneous; or to state it differently, the holding in that case was to the effect that under the part of the evidence therein quoted, a consummation of the sale was a condition precedent to a recovery by the plaintiff.

We have carefully examined the authorities cited by counsel for appellants, a larger portion of which have been herein previously cited, and do not find that they militate against the conclusion here reached, as the agreements therein sought to be enforced differ materially from that here under consideration. As an illustration in one of the authorities cited—that of Little v. Fleishman, supra—the opinion expressly states that the plaintiffs "were employed to effect, not consummate, a sale, and were entitled to a commission in the event of a sale at any price agreed upon."

Here the contract was expressly conditioned upon the ability of the defendant to fur-

nish a satisfactory title, and the compensation of the plaintiffs was to be out of the proceeds of the money received by the defendant, and was not to be paid until the consummation of this sale. Such was the express agreement of the parties.

The quotation from Cremer v. Miller, supra, shows that the inability to make title would not, under a contract of this character, constitute "fraud, bad faith or wrongful acts," subjecting the defendant to liability.

In the instant case, the contingency of a defective title was provided for, anticipated by the language of the parties as expressed in the contract. We are clear to the view, therefore, that, under the agreed statement of facts, the defendant is not liable to the plaintiffs for these commissions, and the trial court correctly ruled in giving the affirmative charge in his favor.

Let the judgment therefore be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.