### Swift v. Hale & Covington Real Estate Company.

(Decided November 14, 1922.)

### Appeal from Graves Circuit Court.

Brokers—Real Estate Broker—Commissions—Performance of Obligation.—By contract to expire on December 25, defendant employed plaintiffs to sell his farm. On December 23 plaintiffs wired defendant: "Your place sold. Forfeit up. Make deed when you return." On December 30 the dwelling house on the land, which was insured for $3,200.00, was destroyed by fire. Plaintiffs then wrote defendant that the purchaser was willing to pay the balance of the purchase price, after deducting the $3,200.00, insurance money, but defendant declined to accept the proposition on the ground that the loss had not been adjusted: Held, that plaintiffs did not perform their engagement so as to entitle them to commissions, by procuring a purchaser ready, able and willing to buy upon the terms proposed by the defendant, or subsequently accepted by him.

STANFIELD & STANFIELD and ROBBINS & ROBBINS for appellant.

L. R. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The Hale and Covington Real Estate Company sued O. H. Swift to recover a commission of $600.00. From a verdict and judgment in their favor, Swift appeals.

The facts are these: On September 15, 1919, Swift entered into a contract with the Hale and Covington Real Estate Company by which he gave them the exclusive privilege of selling or trading an 18 acre farm, located in Graves county. The contract provided that the sale should net Swift $13,000.00 and that the firm should receive as a commission all that the property brought over that sum. The contract expired December 25, 1919, and provided that one-half of all amounts put up by any purchaser as a forfeit, and forfeited, should accrue to the firm. After the execution of the contract Swift sold a portion of the land for $2,900.00, and it was then agreed between the parties that the net amount that Swift should receive for the balance of the property was $10,100.00. On December 17, 1919, Swift left for California and arrived at San Bernardino December 21, 1919. On December 23 the agents sold the balance of the farm to Ot Bailey for the sum of $10,700.00, of which one-third was payable in cash and the balance in 1, 2 and 3 years. Bailey put up with the agent $600.00, to be forfeited in case he declined to accept the deed. On the day of the sale the agents wired Swift as follows:

"Your place sold. Forfeit up. Make deed when you return."

On the same day the telegram was delivered to Swift's wife, at the home of her daughter in San Bernardino; but Swift claims that he was away and did not receive the telegram until December 26. On December 30 following the dwelling on the land, which was insured for $3,200.00, was destroyed by fire. On January 1, 1920, the agents wrote Swift as follows:

"We wired you on December 23d that 'we had sold your place. Forfeit up, and would make deed when you returned,' being under the impression that you would be back by the first of the year; but we have been informed that you would be gone for about three months.

"Mr. Bailey, the party to whom we sold your place, wants a deed now and says that you may deduct the $3,200.00 insurance money from the sale price, $10,-700.00, and he will accept the place.

"Please write us at once if you desire the deed written here and mailed to you for your acknowledgment, or better still, have the deed written there and acknowledged and mailed to us and we will deliver same. The consideration would be $7,500.00 after deducting the insurance, and he desires to pay $3,000.00 and the balance in 1, 2 and 3 years.

"Please give this matter your immediate attention and oblige.  . . .  "

On January 15, 1920, the agents received from Swift the following letter, dated January 11, 1920:

"In answer to your letter of the 1st, will say my loss has not been adjusted, and I can't fix how you and Mr. Bailey can fix any price on my place as I am torn up at this time. You need not consider Mr. Bailey as your time has expired some time ago."

Thereafter Swift collected insurance of $3,200.00, and on his return to Kentucky, about April 1, tendered Bailey, the purchaser, a deed to the land containing the following: "For a consideration, $7,500.00 (being $10,-100.00 less the insurance, $3,200.00), terms $3,000.00 cash, balance 1, 2 and 3 years;" but the purchaser declined to accept the deed.

The only question we deem it necessary to consider is whether appellant's motion for a peremptory instruction should have been sustained.

Under the rule prevailing in this state it is not necessary for a real estate broker to take from the purchaser a binding contract, but he is entitled to his commission if he furnishes a purchaser who is ready, able and willing to buy upon the terms proposed by the owner and continues so until the owner has been given a reasonable opportunity to execute the sale. Pope v. Caddell, 125 Ky. 837, 102 S. W. 327. Moreover, if such a purchaser be procured by the broker, he is entitled to his commission, whether the sale is consummated or not, unless the failure to consummate the sale was due to some fault on his part. 9 C. J. 597. There is also another rule which must not be overlooked, and that is, where a broker instead of procuring a person who is ready, able and willing to accept the terms which his principal authorized him to offer at the time of his employment, procures one who makes a counter offer, more or less at variance with that of his principal, the latter is at perfect liberty either to accept the proposed party upon the altered terms or to decline to do so. If he ac-

cepts, he is bound for the commission, but if he refuses he incurs no liability, for if he does not see fit to modify his original proposal, the broker can lay no claims to his commission until he produces a person who is ready, able and willing to accept the exact terms of his principal. 4 R. C. L. 313-314; Jepsen v. Marohn, 22 S. D. 593, 119 N. W. 988, 21 L. R. A. (N S.) 935; Gore v. Griffith Realty Co., 160 Ky. 241, 169 S. W. 685.

With these principles in mind, let us examine the facts. The brokers themselves were responsible 'for the delay in the execution of the deed, for in the telegram advising him of the sale they notified Swift that he need not execute the deed until his return to Kentucky. Before he returned, or had an opportunity to return, the dwelling house was destroyed by fire, thus making a very material change in the subject matter of the transaction. From that time on the purchaser was not ready, willing and able to buy the property on the terms fixed by Swift, but made an entirely new proposal, which Swift did not accept and was under no obligation to accept. As appellees did not perform their engagement by procuring a purchaser ready, able and willing to buy on the terms originally proposed by appellant or subsequently accepted by him, it necessarily results that they were not entitled to the commission and that appellant's motion for a directed verdict should have been sustained.

Judgment reversed and cause remanded for a new trial consistent with this opinion.